UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

HARD ROCK CAFÉ INTERNATIONAL
(USA), INC., a Florida corporation,

    Plaintiff,

v.

CASE NO. 6:11-cv-1340-Orl-28DAB

AMERICAN HORSE, LLC, a Florida
limited liability company and MICKI
FREE, an individual,

    Defendants.
_____/

## COMPLAINT

Plaintiff HARD ROCK CAFÉ INTERNATIONAL (USA), INC. ("HRC"), sues Defendants AMERICAN HORSE, LLC ("American Horse") and MICKI FREE ("Free") and alleges:

### Parties

1. HRC is a Florida corporation in good standing with its principal place of business at 6100 Old Park Lane, Orlando, Florida 32835.

2. American Horse is a Florida limited liability company in good standing. American Horse maintains its principal place of business at 625 North Crescent Drive, Hollywood, Florida 33021.

3. Free is an individual who, upon information and belief was and is at all relevant times a resident of the State of Florida residing at 625 North Crescent Drive, Hollywood, Florida 33021. Upon information and belief, Free is the sole managing member of American Horse. He is also the registered agent of American Horse.

1

### Jurisdiction and Venue

4. This Court has subject matter jurisdiction over this action pursuant to 15 U.S.C. §1121 and §28 U.S.C. §§1338, 1367 and 2201.

5. This Court has personal jurisdiction over the defendants since American Horse is a Florida Limited Liability Company organized pursuant to the laws of the State of Florida and Free is an individual who resides with the State of Florida.

6. Venue is proper before this Court pursuant to 28 U.S.C. §§1391(b) & (c) since American Horse has contacts sufficient with the Middle District of Florida to subject it to personal jurisdiction within the district and a substantial part of the events giving rise to this action occurred within the district. Venue is proper in this division pursuant to Local Rule 1.02(c), Local Rules for the Middle District of Florida.

7. All conditions precedent to the institution, maintenance and prosecution of this action have occurred, have been performed or have otherwise have been waived.

### General Allegations

8. HRC has been engaged in the business of restaurant, leisure and entertainment services using its HARD ROCK® mark since at least as early as 1978. HRC has, over the years, expanded its business through a variety of music related ventures that include, but are not limited to, restaurants, hotels, casinos, apparel merchandising, non-apparel merchandising, theme parks and live music events.

9. In March 2007, the Seminole Tribe of Florida (the "Tribe") acquired ownership of HRC.

10. In the Spring of 2009, HRC was approached by Free – who was then an employee of the Tribe acting as Director of Seminole Heritage Events & Promotions – regarding the

merchandising of apparel bearing the trademark "NATIVE MUSIC ROCKS®" co-branded with HRC's world famous HARD ROCK® trademark (hereinafter referred to as the "Co-Branded Apparel"). HRC was advised that all proceeds from the Co-Branded Apparel would inure to the benefit of the Tribe's Seminole Star Search program. Amenable to assisting and facilitating in the merchandising of the Co-Branded Apparel, particularly insofar as proceeds were intended to benefit the Seminole Star Search program of HRC's owner, HRC agreed to sell Co-Branded Apparel in various of its Hard Rock retail outlets.

11. To effectuate this program, HRC arranged for a license agreement with HRC's long-standing vendor, Entertainer Outfitters, LLC ("EOI"). As vendor, EOI would develop the apparel line including specific apparel choices and overall product design. EOI would also manufacture the Co-Branded Apparel which would then be sold to HRC for resale through HRC's Hard Rock retail outlets. In return, EOI would then pay royalties for the use of the Co-Branded Apparel that, based upon the understanding of the parties, would revert to the Tribe's Seminole Star Search program.

12. For reasons unclear to HRC, Free utilized American Horse as the Licensor for the Co-Branded Apparel program.

13. Subsequent to the June 15, 2009 License Agreement between American Horse and EOI, EOI began developing a variety of ornamental product designs for the Co-Branded Apparel. Pursuant to the terms of the License Agreement, all designs were subject to the review and approval of American Horse.

14. At all times material, American Horse acted solely through the actions of Free in his review and approval of the EOI designs for the Co-Branded Apparel.

15. In the course of developing designs for the Co-Branded Apparel, EOI – with full knowledge, consent and approval of American Horse and Free – incorporated a modified version of an ornamental design utilized on the Defendants' website www.mickifree.com. A copy of the ornamental tattoo design is attached as Exhibit "A." ("Ornamental Tattoo Design") Examples of the modified ornamental tattoo design utilized in artwork designed by EOI for the Co-Branded Apparel are attached as Exhibit "B." ("Disputed Ornamental Tattoo Design.")

16. Upon information and belief, the Ornamental Tattoo Design in question is similar to a tattoo which adorns Free's arms.

17. As part of its development of the designs for the Co-Branded Apparel, EOI routinely submitted design prototypes, specimens and examples to Defendants for approval.

18. EOI began manufacturing Co-Branded Apparel – the designs of which had previously been approved by Defendants – in or about October, 2009 and sold this merchandise to HRC which in turn sold to the general public through its Hard Rock retail outlets.

19. At no time has EOI manufactured or sold Co-Branded Apparel that was not approved by Defendants.

20. At no time has HRC sold or offered for sale Co-Branded Apparel that was not approved by Defendants.

21. On or about May 20, 2011, Free's employment with the Tribe was terminated. Upon information and belief, certain disputes exist between Free and the Tribe for a variety of matters including Defendants' obligation to remit all license fees derived from the Co-Branded Apparel program to the Tribe's Star Search program.

22. After Free ceased to be employed by the Tribe, Defendants – acting through counsel – notified HRC of Defendants' claims of infringement of trademark, copyright and publicity rights. A copy of this August 3, 2011 letter is attached as Exhibit "C".

23. As reflected in the letter, Defendants assert that the Ornamental Tattoo Design incorporated into certain Co-Branded Apparel designs to create the Disputed Ornamental Tattoo Design is a trademark owned by American Horse and that HRC's sale of Co-Branded Apparel incorporating the Disputed Ornamental Tattoo Design constitutes an infringement of American Horse's alleged trademark in the Ornamental Tattoo Design. Similarly, Free contends that he is the copyright owner in this Disputed Ornamental Tattoo Design and that HRC's sale of Co-Branded Apparel incorporating the design infringes his copyright.

24. Upon information and belief, neither Defendant has ever sought to register a claim of Copyright in the Ornamental Tattoo Design with the United States Copyright Office.

25. On or about January 10, 2010, American Horse filed an application with the United States Patent and Trademark Office (the "PTO") to register a version of the Ornamental Tattoo Design depicted below as a trademark for clothing (IC 25) and entertainment services (IC 41) on an intent to use basis. (Ser. No. 77909978).



A copy of the PTO's TESS and TARR print outs for this application is attached as Exhibit "D."

26. On September 14, 2010, the PTO issued a Notice of Approval of this intent to use application. Since that time, American Horse has sought extensions for the required Statement of Use indicating that American Horse has yet to use the trademark in commerce.

### Prior State Court Lawsuit

27. HRC has previously filed an action against Defendants before the Circuit Court of the Ninth Judicial Circuit of the State of Florida in and for Orange County styled *Hard Rock Café' International (USA), Inc. v. American Horse, LLC and Micki Free,* Case No. 2011-CA-010068-O. (the "State Court Lawsuit"). In the State Court Lawsuit, HRC seeks a judicial declaration under state law that it has either an express written license or implied license to use the Disputed Ornamental Tattoo Design, or that Defendants have acquiesced and/or are estopped from preventing HRC from selling Co-Branded Apparel bearing the Disputed Ornamental Tattoo Design and that Free has no rights of publicity under Fla. Stat. §540.08 that are infringed by HRC's sale of Co-Branded Apparel.

28. While HRC believes that it possesses rights under state law to sell the Co-Branded Apparel bearing the Disputed Ornamental Tattoo Design, HRC recognizes the possibility that the state court may find otherwise. Accordingly, HRC brings this action under federal law as an alternative in the event that HRC's position is not upheld by the state court.

### COUNT I

### (Declaratory Judgment – Invalidity/Non-Infingement of Trademark)

29. This is an action for declaratory relief pursuant to 28 U.S.C. §2201.

30. The allegations of Paragraphs 1 through 28 above are incorporated herein by reference.

31. American Horse – through its counsel – has asserted that it possesses federal trademark rights in the Ornamental Tattoo Design and said rights are infringed by HRC's sales of Co-Branded Apparel bearing the Disputed Ornamental Tattoo Design. American Horse is demanding damages and other relief related to this claim.

32. This Court has jurisdiction to declare rights and other equitable legal relations between the parties and the existence or non-existence of any power, privilege or right.

33. A *bona fide* dispute exists between the parties as to the claims of American Horse regarding its rights, if any, in the Ornamental Tattoo Design. Thus, declaratory relief is an appropriate and proper means to determine the existence of American Horse's claim of trademark infringement by HRC through its sale of Co-Branded Apparel depicting the Disputed Ornamental Tattoo Design.

34. Upon information and belief, and based upon the representations of American Horse to the PTO, American Horse has not used the Ornamental Tattoo Design in interstate or foreign commerce and, therefore, has no protectible trademark rights.

35. The Ornamental Tattoo Design is primarily ornamental in nature, fails to serve as a source identifier and has not acquired the requisite secondary meaning to be a protectible trademark.

36. Upon information and belief, American Horse is not the owner of any trademark rights in the Ornamental Tattoo Design.

37. Even if American Horse is the owner of protectible trademark rights in the Ornamental Tattoo Design, HRC's sale of Co-Branded Apparel utilizing the Disputed Ornamental Tattoo Design is not likely to cause confusion among the purchasing public.

38. Even if American Horse is the owner of protectible trademark rights in the Ornamental Tattoo Design and even if HRC's sale of Co-Branded Apparel utilizing the Disputed Ornamental Tattoo Design is likely to cause confusion among the purchasing public, American Horse has suffered no injury or damages which may be redressed at law or in equity.

WHEREFORE HRC respectfully requests that this Court enter a Declaratory Judgment establishing:

A. That American Horse possesses no valid trademark rights in the Ornamental Tattoo Design; and/or

B. That HRC's sale of Co-Branded Apparel utilizing the Disputed Ornamental Tattoo Design is not likely to cause confusion among the purchasing public; and/or

C. That American Horse has suffered no injury or damages which may be redressed at law or in equity.

And further awarding HRC is costs in this action, including its reasonable attorneys' fees pursuant to 15 U.S.C. §1117(a), and such further relief as this Court deems just and necessary.

## COUNT II

### (Declaratory Judgment – Invalidity/Non-Infringement of Copyright)

39. This is an action for declaratory relief pursuant to 28 U.S.C. §2201.

40. The allegations of Paragraphs 1 through 28 above are incorporated herein by reference.

41. Free – through his counsel – has asserted that he possesses a copyright in the Ornamental Tattoo Design and that his rights are infringed by HRC's sales of Co-Branded

Apparel bearing the Disputed Ornamental Tattoo Design. American Horse is demanding damages and other relief related to this claim.

42. This Court has jurisdiction to declare rights and other equitable legal relations between the parties and the existence or non-existence of any power, privilege or right.

43. A *bona fide* dispute exists between the parties as to the claims of Free regarding his rights, if any, in the Ornamental Tattoo Design and whether HRC's sale of Co-Branded Apparel bearing the Disputed Ornamental Tattoo Design is an infringement of said rights. HRC is in doubt regarding its rights. Thus, declaratory relief is an appropriate and proper means to determine the existence of Free's claim of copyright infringement by HRC through its sale of Co-Branded Apparel depicting the Disputed Ornamental Tattoo Design.

44. Upon information and belief, Free is not the author of either the Ornamental Tattoo Design or Disputed Ornamental Tattoo Design and has not acquired any exclusive rights under copyright law in the Ornamental Tattoo Design or Disputed Ornamental Tattoo Design.

45. Upon information and belief, the Ornamental Tattoo Design is not original to Free, did not originate with Free, and pre-exists in the public domain such that the Ornamental Tattoo Design is not within the scope of protection under the Copyright laws.

46. Even if the Ornamental Tattoo Design is protectible under Copyright law and owned by Free, HRC's sale of Co-Branded Apparel bearing the Disputed Ornamental Tattoo Design is not infringing since the Disputed Ornamental Tattoo Design is an authorized derivative work owned by a third party as a work for hire by EOI and/or not substantially similar to the Ornamental Tattoo Design.

47. Even if the Ornamental Tattoo Design is protectible under Copyright law, owned by Free and infringed by HRC's sale of Co-Branded Apparel depicting the Disputed Ornamental

Tattoo Design, Free has suffered no injury or damages that may be redressed under 17 U.S.C. §§502, 503 or 504.

WHEREFORE HRC respectfully requests that this Court enter a Declaratory Judgment establishing:

A.  That the Ornamental Tattoo Design is not protectible under Copyright; and/or

B.  That Free is not the owner of any exclusive copyright rights in the Ornamental Tattoo Design or the Disputed Ornamental Tattoo Design; and/or

C.  That the Ornamental Tattoo Design is not infringed by HRC's sale of Co-Branded Apparel depicting the Disputed Ornamental Tattoo Design; and/or

D.  That Free has suffered no injury or damages that may be redressed under 17 U.S.C. §§502, 503 or 504.

And further awarding HRC its costs in this action, including its reasonable attorneys' fees pursuant to 17 U.S.C. §505, and such further relief as this Court deems just and necessary.

FRANK R. JAKES, FBN #372226
JOSEPH J. WEISSMAN, FBN #0041424
JOHNSON, POPE, BOKOR, RUPPEL &
  BURNS, LLC
403 E. Madison Street, Suite 400
Tampa, FL 33602
Telephone: (813) 225-2500
Facsimile: (813) 223-7118
E-Mail: frankj@jpfirm.com